UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20569-CR-LENARD

UNITED STATES OF AMERICA   )
                           )
v.                         )
                           )
ANDREW DAVID MARSHALL,     )
                           )
    Defendant.             )
_____)

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge Joan A. Lenard. Pursuant to such reference, the Court has received and reviewed Defendant's 2d Motion to Suppress (DE 207) and the government's response (DE 216). On October 7, 2008, the Court held a hearing on Defendant's motion. Defendant appeared *pro se* with the assistance of standby counsel Nina Mandel. The government was represented by Assistant United States Attorney Scott Edenfield.

Through his Motion, Defendant challenges the government's seizure of alleged silencer components from his sailboat and public storage unit. Defendant claims that the officers' search exceeded the scope of the warrant.

## FACTUAL BACKGROUND

On July 6, 2007, Special Agent Richard Gaskins of the Federal Bureau of Investigation submitted three search warrant applications. Of those applications, only two are relevant here: one seeking authority to search a sailboat belonging to Defendant, and one seeking authority to search a public storage unit leased by Defendant.

The affidavit submitted by Agent Gaskins in support of the applications is fifteen pages long. The affidavit references three primary statutes: 18 U.S.C. § 842(a)(3)(a), which prohibits receipt of explosive material without appropriate permits; 18 U.S.C. § 842(j), which prohibits storage of explosive materials in a manner not in conformity with applicable regulations, and 26 U.S.C. § 5861(d), which prohibits possession of certain firearms if they are not registered. The affidavit sets forth the following facts, among others, to establish probable cause that evidence of these offenses would be found on Defendant's sailboat and in Defendant's public storage unit:

> "On May 30, 2007 a protected source contacted the FBI with concerns for the safety and well being of Andrew David Marshall ....The protected source questioned the current mental state of Mr. Marshall fearing Mr. Marshall has become isolated and paranoid. The protected source referred to Mr. Marshall as the next potential Ted Kazinsky, a.k.a. 'The Unabomber.'" (Aff. ¶ 9.)

> Defendant had posted material to the website dinnerkey.com, including a link to a website known as "The Weapons and Explosives Forum." That website is a public forum discussing how to mix chemical compounds and chemical compounds for weapons. (*Id.* ¶ 11.)

> Officers had discovered several visits by Defendant to various gun and weapons broker web sites. (*Id.* ¶ 12.)

> Records established that Defendant had made several purchases of inert weapons and chemicals over the Internet. (*Id.* ¶¶ 14-16.)

> An explosives expert at the FBI had reviewed the items purchased and determined that Defendant could use the chemicals to make homemade black powder. (*Id.* ¶ 17.) A second expert had determined that it was reasonable to believe that Defendant was "attempting to learn about the M577 Artillery Fuse and how to make the ordinance a live functioning explosive device." (*Id.* ¶ 18.)

> Defendant had purchased one hundred feet of "1/8 inch cannon fuse fireworks pyro safety fuse" over the Internet. (*Id.* ¶ 14.)

> Defendant had been observed utilizing his storage unit. (*Id.* ¶ 19.) A dog trained in explosives detection had alerted outside the storage unit. (*Id.* ¶ 22.) A regulatory expert had examined the storage unit and determined that it did not conform with regulations governing the storage of explosives. (*Id.* ¶ 20.)

Defendant was not registered in the National Firearms Registration and Transfer Record for possessing a destructive device, and he had never possessed a permit to receive explosives. (*Id.* ¶ 21.)

On June 21, 2007, aboard Defendant's sailboat, an officer observed a laptop computer. (*Id.* ¶ 26.)

On June 29, 2007, officers aboard Defendant's boat observed Defendant display a pineapple grenade. (*Id.* ¶ 27.) Officers observed Defendant pull the pin from the grenade and observed a spark. (*Id.*)

The requested search warrants were issued. Attachment F of the search warrant, which is referenced in, and attached to, the affidavit, lists the items to be seized. The list includes black powder; sulfur; grenades; destructive devices; "books and manuals instructing in the construction and/or use of explosive devices/materials;" "documentation and records related to e-mail and internet accounts;" "Electronic Storage Media, including floppy disks, dvds, CDs, thumb drives, memory sticks;" a laptop computer; and "firearms."

At the hearing, Special Agent Lazaro Gomilla, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, testified that prior to conducting the searches, officers were given a briefing about what items they were seeking to locate. Gomilla was present at the public storage unit on the date of the search and observed certain of the components at that unit which Defendant seeks to suppress. He further testified that when he saw the components that are the subject of the Defendant's motion, he immediately recognized them as components of a silencer and instructed agents to seize them.

Special Agent Ruben Munoz, of the FBI, testified that he observed the remaining components Defendant seeks to suppress aboard Defendant's sailboat. He testified that the search of the sailboat took place after the search of the Public Storage unit and that he seized the components based upon information given to him by another officer that the components were prohibited items.

3

Gomilla testified that prior to the search, he had determined that Defendant was not registered, as required, to possess a National Firearms Act firearm. He also testified to his previous experience with silencers and silencer components. The Court find Agent Gomilla's testimony to be highly credible.

## DISCUSSION

Defendant's motion seeks to suppress the components seized from his Public Storage unit and sailboat that the Government asserts are silencers. Defendant alleges that the components were seized outside of the scope of the warrant pursuant to a general exploratory search. Defendant's argument suffers from two fatal flaws. First, the components were specifically within the scope of the warrant issued. Second, even if the firearms were outside of the warrant's scope, they would have been properly seized pursuant to the plain view exception.

Attachment F of the search warrant listed the items to be seized. Listed among those items is the term "firearms." 26 U.S.C. § 5845(a) defines "firearm" to include "any silencer (as defined in section 921 of title 18, United States Code)." 26 U.S.C. § 5845(a)(7). Section 921, in turn, defines a silencer to include "any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer" and "any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(24). Agent Gomilla testified that he recognized the components as parts of a silencer. By definition, such parts are firearms. Because seizure of firearms was expressly provided for by the search warrant, Defendant's argument that seizure of those items was outside of the warrant's scope must be rejected.

Defendant argues that inclusion of the term "firearms" in Attachment F was improper. Defendant argues that inclusion of the term made the warrant overbroad since it was not limited to

firearms as defined by the National Firearms Act ("NFA") and, accordingly, the warrant allowed officers to search for and seize non-NFA firearms. But Defendant's motion does not challenge the seizure of a non-NFA firearm; it challenges the seizure of an NFA firearm. Moreover, as set forth below, officers appropriately relied on the search warrant's terms pursuant to the good-faith exception.

Ordinarily, a law enforcement officer may rely on a facially valid warrant unless (1) the magistrate issued the warrant based upon a false affidavit, (2) the magistrate failed to act in as neutral or detached manner, (3) the warrant was so lacking in indicia of probable cause that official belief in its existence was entirely unreasonable, or (4) the warrant was so facially deficient by failing to particularize the things to be searched or seized that the executing officers could not reasonably presume it to be valid. *See United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002). None of these four conditions apply in the present case. Thus, officers were permitted to seize the components in good faith reliance upon the list of items to be seized attached to the warrant.

Finally, if Defendant's argument regarding the warrant's inclusion of the term "firearms" were valid, seizure of the components would nevertheless have been proper. The search warrant allowed law enforcement officers to search for black powder; sulfur; grenades; books and manuals; documentation; and Electronic Storage Media, including floppy disks, DVDs, CDs, thumb drives, and memory sticks. Officers thus were permitted to search anywhere within the sailboat or public storage unit, including containers, that such items might be found. *See United States v. Jackson*, 120 F.3d 1226, 1228-29 (11th Cir. 1997). Officers' search for chemicals, CDs, or documents would allow them to inspect any area of the public storage unit or sailboat where the components might have been secreted. The Court accepts Agent Gomilla's testimony that the components were immediately

recognizable as silencer components and that, before the search was executed, he had determined that Defendant did not have permission to possess such components. Seizure of the components was thus also permissible pursuant to the plain view exception.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, and based upon the Court's review of the record and consideration of the submissions and argument of counsel, the undersigned respectfully

RECOMMENDS that Defendant's 2nd Motion to Suppress be DENIED.

The parties have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with United States District Judge Joan A. Lenard. *See* 26 U.S.C. § 636. Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *Loconte v. Dugger*, 847 F.2d 745, 750 (11th Cir.), *cert. denied*, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse. Miami, Florida, this 22nd day of October, 2008.

_____
BARRY V. GARBER
UNITED STATES MAGISTRATE JUDGE