UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20569-CR-Lenard/Garber

UNITED STATES OF AMERICA

v.

ANDREW MARSHALL,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court by Order of Reference from United States District Judge Joan A. Lenard. Pursuant to such reference, the Court has received the defendant Marshall's Motion to Suppress [DE 344] and the government's response in opposition. A hearing on said Motion was held on October 21, 2009. The defendant appeared with his attorney of record, Derek Lewis, Esquire, and the government was represented by Assistant United States Attorney Scott Edenfield.

FACTUAL BACKGROUND

On July 6, 2007, pursuant to issued search warrants, law enforcement officers conducted searches on the defendant's sailboat and his public storage unit. While the searches were taking place, other law enforcement personnel attempted to locate the defendant. The defendant was being investigated for "possibly having purchased a safety fuse."[1]

The defendant was found at a Starbucks in Coconut Grove at about 10:00 A.M. As he was departing from Starbucks, he was approached by Special Agent Thomas Ryan of the FBI and a police officer of the City of Miami. Other law enforcement officers were in the area but remained at a

---

[1] Testimony of Agent Ryan, at page 9 of the suppression hearing transcript.

distance from the defendant. Agent Ryan asked the defendant if he would speak with him and the defendant was agreeable. Agent Ryan advised the defendant that his sailboat and storage unit were being searched at that time.

The testimony regarding Agent Ryan's initial contact with the defendant is in conflict. Agent Ryan testified that he identified himself to the defendant, showed his identification, and asked to speak with him. The defendant claims that he was initially taken into custody after being accosted by law enforcement officers after he left Starbucks and that he felt an object being thrust into his back which he believed to be a Glock weapon. He also claimed that he was then grabbed by law enforcement officers, who "wrapped" his arms.[2] He said that he felt intimidated. Such conflict, as others in this cause, will be resolved based upon the credibility of the witnesses.

The defendant was advised by law enforcement officers that search warrants were being executed at that time on his sailboat, a storage unit, and a dinghy that he utilized. The defendant was advised by Special Agent Ryan that he could not return to those areas where such searches were being conducted. The defendant stated that he wished to see the search warrants which were brought to him and read to him by Special Agent Gaskins. Thereafter, the defendant was asked if he was willing to accompany the agents to explain what was going on and he agreed to do so. Special Agent Ryan testified that the defendant was never told that he had to accompany the agents, and the defendant agreed to accompany them. The defendant was taken to the Miami Police Department by Agent Ryan and two City of Miami police officers. Agent Ryan testified that the defendant was not handcuffed and at no time did the law enforcement officers have their weapons drawn.

---

[2]Marshall's testimony at page 76 of the transcript.

2

On the drive to the Miami Police Department, the officers spoke with the defendant and Agent Ryan said that he thanked the defendant for his cooperation. According to Special Agent Ryan, the defendant stated that it was not a problem for him and never indicated an unwillingness to accompany the officers.

Upon arrival at the police department, the defendant stated that he wished to smoke a cigarette and was permitted to do so outside of the police department. He was taken to an interview room which contained a number of chairs. The interview area was not open to the public and movement in that area required an escort from the police department. The defendant testified that the door to the interview room was closed and locked; Agent Ryan testified that it was open and unlocked.

The defendant, at the inception of the interview, stated that he had nothing to hide and was willing to talk with the law enforcement officers. They discussed various items that might be found in the areas being searched such as chemicals, artillery, shells, books, DVDs on bomb making equipment, silencers, and other hardware. At no time during this interview did the defendant request an attorney nor did he state that he did not wish to continue talking. Agents Ryan and Gaskins both testified that the defendant had not been threatened and the tone of the interview was relaxed with no voices raised. The defendant advised the officers that he had a workers compensation proceeding pending as the result of an injury that made walking difficult. It was Agent Ryan's opinion that the defendant's physical problems did not affect his comprehension or ability to interact during the interview and he was never told that he was not permitted to leave. As a matter of fact, the defendant was provided with a chair while outside of the Starbucks location.

During the interview several bathroom breaks and/or smoke breaks were taken at the defendant's request. The defendant was also provided with food and drink. During the breaks taken by the defendant, he was accompanied by law enforcement officers who were required for the defendant to exit the building for a smoke and to again enter the building. Agent Ryan testified that they had not intended to arrest the defendant at that time. Following the interview at the Miami Police Department, the officers intended to return the defendant back to the Starbucks to retrieve his motorcycle which he had left there. Prior to departing to retrieve the motorcycle, Agent Ryan received a telephone call from Special Agent Gaskins, who was involved in the execution of the search warrants, and Agent Ryan was instructed to place the defendant under arrest. The defendant was then arrested and handcuffed.

The law enforcement officers then proceeded to the FBI headquarters in North Miami Beach, at which time he was processed by obtaining from him the usual historical and biographical information and fingerprints. Agent Ryan testified that the defendant, prior to any questioning, was given a Miranda form and it was read to him by Ryan, who also had the defendant read said form, which he did. Agent Ryan testified that the defendant did not ask any questions about the form and signed it, waiving his rights and agreeing to be questioned.[3] The defendant, in his testimony, acknowledged that he read and understood the Miranda form and signed it, thus agreeing to be questioned. He also stated that he did not feel intimidated at the time he signed the Miranda form, which was received as government's Exhibit 1 at the hearing.

---

[3]All references to testimony are based upon such sworn testimony as is contained in the transcript of the suppression hearing.

The defendant testified inter alia that the Special Agents asked him if he would "volunteer to having my storage place searched."[4] The defendant testified that he did object to it and did not volunteer. A search warrant had already been procured and the search of the properties was then being conducted. The Court finds that there was absolutely no need for the defendant's consent for the search and is satisfied that no such conversation regarding the defendant's consent ever took place.

The defendant claims that he requested an attorney to be present at his interview. Both Agents Ryan and Gaskins testified that the defendant never requested to contact an attorney.

The defendant, in his Motion now before the Court, claims that statements made by him at the Miami Police Department should be suppressed because he was not given his Miranda rights which are required when a defendant is in custody. He also claims that his questioning at the FBI headquarters should be suppressed as being "fruit of the poisonous tree" and thus implicates the Fourth Amendment's prohibition of unreasonable searches and seizures. *Wong Sun v. United States*, 371 U.S. 471 (1963). The Court finds that the evidence obtained, through the execution of the search warrants and statements given by the defendant, do not implicate the Fourth Amendment.

DISCUSSION

At the outset, the Court finds the testimony of Agents Ryan and Gaskins to be highly credible. They conducted the questioning of the defendant at the Miami Police Department in a highly professional manner following the defendant's agreement to accompany them to that venue. Throughout their participation in the investigation as described at the hearing, both Special Agents expressed concerns about the defendant's well-being: offered him a chair, permitted him numerous

---

[4] Transcript of hearing, at page 79, line 21.

breaks to smoke cigarettes, provided him with food and drink, and were not abusive or unreasonable in their treatment of the defendant.

The defendant, admittedly familiar with the judicial system by his own statements, certainly had an obvious interest in the outcome of these proceedings. However, the Court finds his credibility lacking because of his testimony regarding the alleged request for his consent to search his property, his claims in his Motion that he was intimidated by the police, resulting in his signing the Miranda form, as compared with his testimony at the hearing that he did not feel intimidated.

The Court finds that the defendant was not in custody at the Miami Police Department and thus it was not necessary for him to be Mirandized. This conclusion is reached because the defendant was not handcuffed, was permitted to leave the interrogation room for smoke breaks, was provided with food and drink, and was about to be returned to his motorcycle parked near the Starbucks prior to the Special Agent Ryan being instructed to arrest him. The Court finds that the defendant was not in custody even though during his smoke breaks he was accompanied by police officers in order to leave the secured area and return to it following his break. Testimony established that such departures and returns to the secured area must be in the presence of police officers.

The Eleventh Circuit has recognized several factors regarding whether custody exists: whether handcuffs were employed, whether guns were drawn, whether a defendant had been booked or told that he was under arrest, whether the defendant asked to leave or whether he was told that he was not free to leave, whether the person was given breaks during the interview, and whether the defendant asked for an attorney. *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996); *United States v. Muegge*, 225 F.3d 1267, 1271 (11th Cir. 2000); *United States v. Phillips*, 812 F.2d 1355, 1362 (11th Cir. 1987).

At the time of his initial interview, the defendant was not physically moved or restrained by the officers while being taken to the police station, was not handcuffed, no weapons were drawn, the defendant had not been accused or arrested, never asked to leave and was not told that he could not leave, was given breaks and did not ask for an attorney. Based upon the highly credible testimony of Special Agents Ryan and Gaskins, the Court finds that the defendant was not in custody at the Miami Police Department, Miranda warnings were not required in this non-custodial setting, and the statements made by the defendant were freely and voluntarily given by him to law enforcement.

The Court further finds that the execution of the Miranda warning and waiver by the defendant was freely, knowingly, and voluntarily executed by the defendant, who testified that he was given the opportunity to read the form, understood it, and signed it. Accordingly, any statements given by the defendant at the FBI headquarters are not subject to suppression.

## CONCLUSION AND RECOMMENDATION

For reasons set forth above and based upon the Court's review of the record, testimony taken at the hearing, and  consideration of the submissions of the parties, the undersigned respectfully

RECOMMENDS that the defendant Marshall's Motion to Suppress be DENIED.

The parties have ten (10) days from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge Joan A. Lenard. See 28 U.S.C. §636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 18th day of November, 2009.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE