UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20569-CR-LENARD/GARBER

**UNITED STATES OF AMERICA,**

v.

**ANDREW MARSHALL,**

    Defendant.
_____/

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (D.E. 342)

**THIS CAUSE** is before the Court on Defendant Andrew Marshall's Motion to Dismiss Superseding Indictment ("Motion," D.E. 342), filed on September 18, 2009.[1] The Government filed its response in opposition to Defendant's Motion ("Response," D.E. 349) on October 8, 2009. No reply was ever filed. Having considered the Motion, Response, related pleadings, and the record, the Court finds as follows.

**I.     Background**

On April 4, 2008, the Government filed its Superseding Indictment ("Indictment," D.E. 155) charging Defendant with making a firearm without obtaining a license in violation of 26 U.S.C. § 5861(f) (Count 1), possessing unregistered firearms in violation of 26 U.S.C. § 5861(d) (Counts 2-3), and possessing firearms not identified by a serial number in violation

---

[1] The Court notes that Defendant's Motion, filed through counsel, is substantially similar to and includes identical language from pleadings filed *pro se* by the Defendant. (See D.E. 359.)

of 26 U.S.C. § 5861(i) (Counts 4-5). The charges stem from items obtained from searches of the Defendant's public storage unit and sailboat that the Government contends are silencers or silencer components within the definition of "firearm" contained in 18 U.S.C. § 924(a)(24). These items include various "ported tubes," "spacers," "metal pipes," and "metal disks." The Government contends these items were intended to be silencer components.

## II. Defendant's Motion to Dismiss

Defendant moves pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure to dismiss the Indictment on the grounds that: (1) it fails to allege facts demonstrating the charged components were intended for use as silencer components; (2) he did not possess the requisite *mens rea*; (3) the charges are barred by the three-year statute of limitations contained in 26 U.S.C. § 6531; (4) the National Firearm Act's ("NFA") registration requirement violates the Fifth Amendment's privilege against self-incrimination; (5) the Indictment charges the same offense in multiple counts; (6) he is the victim of a vindictive prosecution; and (7) the NFA implements an unconstitutional direct tax.

In response, the Government argues that many of Defendant's arguments raise issues or questions that must be resolved by the jury. Additionally, the Government argues Defendant's remaining challenges are legally deficient.

## III. Discussion

Rule 12(b)(2) of the Federal Rules of Criminal Procedure provides that "[a] party may

raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."

### A. Whether the Seized Components Are Silencers

Defendant argues that the Indictment "does not allege any set of facts indicating that [Defendant] used or intended to use parts he made and possessed solely and exclusively as component parts of a silencer, nor could the parts be assembled into a silencer." (Motion at 4.) Defendant argues that the components seized from his property do not attach to a firearm barrel or fit any known silencer. (Id.) He also argues he never intended to use the parts as component parts of a silencer and discussed legal uses for the parts with others. (Id.) Because Defendant is really raising an issue as to the sufficiency of the factual support for the charges in the Indictment, the Court finds such matters require determination by the jury and this argument is without merit.

### B. *Mens Rea*

Defendant next argues that the components seized from his property indicate he did not possess the *mens rea* necessary to convict him of any crime. Defendant relies upon the language of 18 U.S.C. § 921(a)(24) defining a "silencer" as a device or any combination of parts "intended for use" in assembling or fabricating a silencer. He argues that the components seized are ordinary household items that could be used to build any number of items, including inline water filters, scooter mufflers, or a "mixing valve/eductor pump or aspirator." (Motion at 8.) He argues these items were not intended to be used as a silencer, could not be assembled into a silencer, and do not fit any known silencers. (Id.) Because

3

Defendant is really raising a factual issue of whether he intended to use the components to make or possess a silencer, the Court finds such matters require determination by the jury and this argument is without merit.

### C. Statute of Limitations

Defendant next argues the charged offenses fall outside the three-year statute of limitations. 26 U.S.C. § 6531 provides in part that, "[n]o person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense." Count 1 of the Indictment alleges the Defendant knowingly made a firearm without obtaining a license in violation of 26 U.S.C. § 5861(f) sometime between July 2005 and July 5, 2007. The remaining counts in the Indictment allege that on July 6, 2007, Defendant possessed unregistered firearms that lacked serial numbers. As stated above, the Indictment was filed April 4, 2008. Accordingly, the Indictment properly charges offenses allegedly committed within the three-year statute of limitations and this argument is without merit.

### D. Fifth Amendment Privilege Against Self-Incrimination

Defendant next argues that pursuant to Haynes v. United States, 390 U.S. 85 (1968), charging him with failure to register a firearm violates his Fifth Amendment privilege against self-incrimination. As the Government notes, Haynes held that the NFA's registration procedure violated the privilege against self-incrimination because it required individuals to register unregistered firearms and effectively admit their prior illegal possession. Id. at 100.

Congress then enacted 26 U.S.C. § 5848 which provides that, "[n]o information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter [26 USCS §§ 5801 et seq.] or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence." Both sides agree that the U.S. Supreme Court approved of the modified regulatory scheme in United States v. Freed, 401 U.S. 601 (1971). The Court finds Defendant's reference to Haynes inapposite. The Government is not attempting to use an application he submitted (he submitted none) as proof of his unlicensed possession of a firearm. Therefore, there is no violation of Defendant's Fifth Amendment rights and this argument is without merit.

### E.   Multiplicity of Counts

Defendant next argues that the Indictment charges him with the same offense in multiple counts. First, Defendant argues the legislative intent of the NFA indicates the Government is precluded from charging more than one offense under Section 5861. (Motion at 11-12 (citing United States v. Clements, 471 F.2d 1253, 1255-56 (9th Cir. 1972)).) Thus, there is no need to look at whether the charged offenses contain the same elements. Defendant next argues that under the test articulated in Blockburger v. United States, 248 U.S. 299, 304 (1932), he is charged with a single offense in more than one count where the

making of an unregistered firearm necessarily includes the possession of an unregistered firearm and the possession of a firearm without serial numbers. Defendant further argues that firearms stored in separate locations should not give rise to more than one count of possession. Since Counts 2 and 4 concern items seized from Defendant's storage unit and Counts 3 and 5 concern items seized from Defendant's sailboat, he argues he should not be charged for both locations. Finally, Defendant argues the Indictment violates double jeopardy and prejudices him by suggesting to the jury he has committed several crimes.

The Government argues that Congress has not expressed any clear legislative intent that the Government may only charge a single offense under Section 5861 and cites United States v. Arrington, 618 F.2d 1119 (5th Cir. 1980)[2] and United States v. Jones, 487 F.2d 676, 679 (9th Cir. 1973), in support. (Response at 5-6.) Moreover, the Government contends that the charged offenses satisfy the Blockburger analysis because all of the charged offenses contain elements not present in the others. The Government offers that in order to prove the Section 5861(f) charge, they must prove Defendant made the components without having applied to make them. In order to prove the Section 5861(d) charge, the Government must prove the firearms were not registered. Finally, in order to prove the Section 5861(i) charge, the Government must prove the firearms were not identified by a serial number. Accordingly, the Government argues the Indictment properly charges separate offenses.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

The Court finds nothing precludes the Government from charging Defendant with several violations of the NFA. Defendant relies upon <u>Clements</u> for the proposition that he cannot be charged with violations of 26 U.S.C. §§ 5861(d)(f) and (i) where the NFA's legislative history does not indicate Congressional intent to punish multiple offenses stemming from a single transaction. (Motion at 11-12.) The Ninth Circuit in <u>Clements</u>, however, addressed a different question. See <u>Jones</u>, 487 F.2d at 679. The defendant in <u>Clements</u> was convicted of possession of a firearm upon which the making tax had not been paid in violation of 26 U.S.C. §§ 5861(c), possession of a firearm which had not been registered in violation of 26 U.S.C. §§ 5861(d), and unlawfully making a firearm in violation of 26 U.S.C. §§ 5861(f). The district court judge then sentenced the defendant to three statutory-maximum ten-year sentences to run consecutively. After thoroughly reviewing the legislative history behind the NFA, the court in <u>Clements</u> found nothing in the NFA's legislative history authorizing multiple punishments for a single transaction. 471 F.2d at 1257 ("We conclude that the Act should be construed against the authorization of pyramided punishments for the single transaction herein involved."). Nevertheless, there is nothing in <u>Clements</u> that discusses the Government's ability to charge several different violations of the NFA. Moreover, the <u>Clements</u> decision presumes that the NFA makes "'any' violation of the Act a crime," and cites to legislative history supporting the interpretation that Congress meant to broaden criminal liability while perhaps not broadening punishment for multiple violations. 471 F.2d at 1255-1257. Moreover, the former Fifth Circuit implicitly addressed

7

Defendant's argument with respect to alleged violations of 26 U.S.C. §§ 5861(d) and (i) in Arrington. 618 F.2d at 1126. The defendant in that case argued that "charging both possession of an unregistered firearm and also possession of a firearm without a serial number was multiplicitous, since a firearm without a serial number cannot be registered." Id. The court in Arrington found the defendant's argument "erroneous" and found the charges were not multiplicitous under a Blockburger analysis. Id. Accordingly, the Court proceeds to analyze whether the Indictment violates Blockburger.

"The same-elements test, sometimes referred to as the 'Blockburger' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, 509 U.S. 688, 696 (1993). As the Government notes and is partly addressed in Arrington, all of the charged offenses contain at least one element that is not contained in the others. The Government must prove: (1) Defendant made the components without having applied to make them (with regard to the Section 5861(f) charge); (2) the firearms were not registered (with regard to the Section 5861(d) charge); and (3) the firearms were not identified by a serial number (with regard to the Section 5861(i) charge). Accordingly, the Court finds the Indictment is not deficient for charging Defendant with different violations of Section 5861 that stem from the same act or transaction.

### F.  Vindictive Prosecution

Defendant next argues his prosecution is vindictive. (Motion at 14.) He contends that his prosecution is the result of his posting various messages on dinnerkey.com regarding an

8

unfavorable ruling he received in a lawsuit he commenced against the City of Miami and the Florida Department of Environmental Protection. (Id.) Defendant claims that evidence of the vindictive nature of the prosecution can be gleaned from the fact that 187 of the 310 pages of documents the Government produced in discovery related to his postings. He also believes the search warrant affidavit provided by Special Agent Gaskins provides further evidence. Gaskins' affidavit stated that Defendant had ordered "safety fuse" over the internet and contained omissions. Defendant states, "[i]n essence, Mr. Marshall avers that this entire federal prosecution is the result of his taking a leadership role in bringing to light governmental misconduct and malfeasance." (Id. at 16.)

The Government responds that Defendant's claim of vindictive prosecution fails to warrant an evidentiary hearing as he does not raise a reasonable doubt regarding the Government's motive. First, the Government offers that the large number of internet postings is a consequence of the FBI's desire to collect as much information as possible during its investigation. Second, the Government further points to Magistrate Judge Garber's findings that Gaskins did not knowingly or reckless omit portions of Defendant's internet postings. (Response at 8 (citing D.E. 185 at 20.).) Third, the Government acknowledges that Gaskins' search warrant affidavit incorrectly states that Defendant ordered safety fuse over the internet. (Id.) The Government states that this information was included in the affidavit after investigating agents reviewed records indicating Defendant had purchased "cannon fuse fireworks pyro safety fuse" and that the Government subsequently dismissed charges based

9

on the receipt of safety fuse after tests determined it was not safety fuse. The Government cites to Magistrate Judge Garber's findings that the "safety fuse" misstatement was "at most . . . a negligently false statement." (Id. (citing D.E. 185 at 17.)) Accordingly, the Government contends there is no objective evidence of a vindictive prosecution.

As an initial matter, Defendant's claim is more appropriately termed one of "selective prosecution" rather than "vindictive prosecution." See Hunt v. Tucker, 875 F. Supp. 1487, 1501 & n.19 (N.D. Ala. 1995) ("A prosecutor may not select an individual for prosecution solely because of the exercise of rights under the First Amendment") (citing Arcara v. Cloud Books, Inc., 478 U.S. 697, 707 n.4 (1986)). Defendant is alleging that the Government is prosecuting him for exercising his right to free speech, unlike a typical vindictive prosecution where the government brings additional or more serious charges upon the defendant's exercise of his rights to appellate or collateral relief. Nevertheless, Defendant fails to raise allegations supporting either a selective or vindictive prosecution claim.

With respect to a claim of selective prosecution, the Supreme Court has stated that, "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute. So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Wayte v. United States, 470 U.S. 598, 608-09 (1985) (internal citations omitted). "'A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but

an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.'" United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000) (quoting United States v. Armstrong, 517 U.S. 456, 463 (1996)). "In particular, the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' including the exercise of protected statutory and constitutional rights." Wayte, 470 U.S. at 608 (internal citations omitted).

In order to state a selective prosecution claim, Defendant faces a "heavy burden" and first "must make a prima facie showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted" and then "having satisfied the initial burden, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious." Jones v. White, 992 F.2d 1548, 1571 (11th Cir. 1993). "The invidiousness requirement is met if the defendant establishes that the government's selective prosecution is motivated by constitutionally impermissible motives such as racial or religious discrimination or his exercise of constitutional rights." Id. at 1571-72. "An evidentiary hearing on the issue of selective prosecution is not automatic; such a hearing is conducted 'only where a defendant presents facts sufficient to raise a reasonable doubt about the prosecutor's motive.'" Id. at 1572 (quoting Owen v. Wainwright, 806 F.2d 1519, 1523 (11th Cir.1986) (per curiam), cert. denied, 481 U.S. 1071 (1987)).

Defendant fails to present sufficient facts raising a reasonable doubt about the

prosecutor's motive in charging him. The fact that much of the Government's discovery production consisted of internet postings made by Defendant does not demonstrate an improper motive. The Government turned over the results of its investigation. Whether Defendant's internet postings were a large portion or small portion of the discovery produced is of little relevance. Any inaccuracy in the FBI agents' search warrant affidavit regarding the "safety fuse" also does not present a reasonable doubt concerning the prosecutor's motives. Defendant has also not presented any evidence that others similarly situated were not prosecuted while he was. Accordingly, any selective prosecution claim must fail.

A criminal defendant raising a vindictive prosecution claim must show some objective evidence of actual vindictiveness on the part of the government or raise circumstances meriting a rebuttable presumption of vindictiveness. United States v. Rafferty, 296 Fed. Appx. 788, 796 (11th Cir. 2009). Defendant fails to offer any objective evidence of actual vindictiveness or raise circumstances meriting a rebuttable presumption. Thus, Defendant's vindictive prosecution claim fails.

### G.     Unconstitutional Tax

Finally, Defendant argues that the NFA's "making tax" is an unconstitutional direct tax as applied to individuals like himself. While acknowledging the making tax is constitutional as an excise tax as applied to businesses, he contends it is a direct tax that is unconstitutional as applied to individuals. The Government responds that the tax at issue is a permissible indirect tax and that the nature of the tax is determined by what is taxed and

not who must pay it.  The Court finds Defendant fails to offer any case law or facts demonstrating the "makings tax" is unconstitutional as a direct tax that must be apportioned pursuant to Article I, Section 9, of the U.S. Constitution.  The tax at issue is an appropriate tax on the manufacture and transfer of firearms and thus is a permissible indirect tax.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Andrew Marshall's Motion to Dismiss Superseding Indictment (D.E. 342), filed on September 18, 2009, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of December, 2010.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**