UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20569-CR-LENARD

UNITED STATES OF AMERICA,

v.

ANDREW MARSHALL,

    Defendant.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (D.E. 249) AND DENYING DEFENDANT'S SECOND MOTION TO SUPPRESS (D.E. 207)

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Barry L. Garber ("Report," D.E. 249), issued on October 22, 2008. The Report recommends the Court deny Defendant Andrew Marshall's Second Motion to Suppress ("Motion," D.E. 207).[1] On July 28, 2009, Defendant filed objections to the Report ("Objections," D.E. 326), through his retained counsel. On August 17, 2009, the Government filed its response to Defendant's Objections ("Response," D.E. 335). Having considered the Report, Objections, Response, Motion, related pleadings, and the record, the Court finds as follows.

    **I.**    **Background**

On July 5, 2007, Special Agent Richard Gaskins of the Federal Bureau of

---

[1] Defendant filed his Motion on August 20, 2008. The Government filed its response (D.E. 216) on September 8, 2008. No reply was filed. On October 7, 2008, the Magistrate Judge held a hearing on the matter.

Investigation submitted an affidavit in support of three nearly identical applications for warrants to search Defendant's public storage unit, sailboat, and a dinghy attached to the sailboat. (See D.E. 84-1.) The affidavit sought warrants to search Defendant's property, *inter alia*, based upon information that Defendant had recently purchased or possessed several inert military objects, had recently purchased chemicals which could be used to make explosive materials including black powder, had recently been involved in several unsuccessful lawsuits against governmental entities, and according to a protected source had become mentally unstable. Magistrate Judge Torres signed the search warrants the following day. On July 7, 2007, federal agents executed the search warrants.

On April 4, 2008, the Government filed its Superseding Indictment ("Indictment," D.E. 155) charging Defendant with making a firearm without obtaining a license in violation of 26 U.S.C. § 5861(f) (Count 1), possessing unregistered firearms in violation of 26 U.S.C. § 5861(d) (Counts 2-3), and possessing firearms not identified by a serial number in violation of 26 U.S.C. § 5861(i) (Counts 4-5). The charges stem from items obtained from searches of the Defendant's public storage unit and sailboat that the Government contends are silencers or silencer components within the definition of "firearm" contained in 18 U.S.C. § 924(a)(24). These items include various "ported tubes," "spacers," "metal pipes," and "metal disks." The Government contends these items were intended to be silencer components.

**II.    Report and Objections**

The Report recommends denial of Defendant's Motion. First, the Magistrate Judge found that the components were specifically within the scope of the warrants issued. (Report at 4.) Second, the Magistrate Judge found that even if the search warrant affidavit did not supply probable cause for the seizure of firearms, the officers executing the search relied upon the terms of the search warrant in good faith and the good faith exception to the exclusionary rule should apply. Third, the Magistrate Judge concluded that even if seizure of the silencer components was not authorized by the warrant, the items were properly seized pursuant to the plain view exception. (Id.) In support, the Magistrate Judge found "highly credible" Special Agent Lazaro Gomilla's ("Gomilla") testimony at the October 7, 2008, suppression hearing. (Id.)

Defendant objects to the Report on the grounds that: (1) no explosives or destructive devices were ever seized from his possessions; (2) the search amounted to an illegal fishing expedition; (3) the Magistrate Judge misapplied the "good faith" doctrine; and (4) the Report is factually erroneous. First, Defendant objects to the Magistrate Judge's finding that Special Agent Gomilla's testimony was credible, specifically Gomilla's testimony that he immediately recognized the seized components as silencer components. Next, Defendant argues that none of the parts or accessories seized were listed or otherwise authorized by the search warrant. Defendant also claims the Magistrate Judge misapplied the good faith doctrine because federal agents converted a search for explosive and destructive devices into a more exploratory search.

3

In response, the Government contends the items were properly seized as within the scope of the warrants and additionally pursuant to the plain view exception. First, the Government contends the seized items were recognizable as silencer components. The Government offers that Gomilla testified as to his immediate identification of the silencer components and Special Agent Ruben Munoz ("Munoz") was permitted to rely upon the recognition of his fellow agent despite the fact that it was not immediately apparent to him that the items were silencer parts. Second, the Government argues that "silencer components" are contained within the definitions of "firearm" contained in 26 U.S.C. § 5845(a) and 18 U.S.C. § 921(a)(3), and that the search warrants specifically listed "firearms" as items to be seized. The Government also offers that the search warrants contained sufficient probable cause for the inclusion of "firearms" on the list of items to be seized and agents relied upon the warrants in good faith.

**III.   Standard of Review**

Pursuant to Rule 59(b)(3) of the Federal Rules of Criminal Procedure and 28 U.S.C. § 636(b)(1)(B), the Court must consider *de novo* Defendant's objections to the Report and "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter." In making its determination, the district court is given discretion and "is generally free to employ the magistrate judge's findings to the extent that it sees fit." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1245 (11th Cir. 2007). To the extent the magistrate judge's findings turn on evaluations of credibility or "demeanor-intensive fact

4

finding," those findings should not be rejected or overruled lightly as "the raw transcript of the hearing" does not capture the "nuances of the testimony or the demeanor of the witnesses." Amlong, 500 F.3d at 1248-50.

### IV. Discussion

#### A. Legality of Seizure Pursuant to the Search Warrants

The Fourth Amendment to the U.S. Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The requirement that warrants particularly describe the place to be searched and the things to be seized makes general searches under them impossible." United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000) (citing Stanford v. Texas, 379 U.S. 476, 486 (1965)). A warrant which fails to sufficiently particularize the things to be seized is unconstitutionally overbroad and the resulting search is unconstitutional. Id. "In order to deter such warrants and searches, the Court has held that any evidence so seized must be excluded from the trial of the defendant." Id. (citing Stone v. Powell, 428 U.S. 465, 486, (1976)).

One exception to the exclusionary rule is the good faith exception articulated in United States v. Leon, 468 U.S. 897, 922 (1984). That exception "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers

5

acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002). The good faith exception may be applicable absent the following circumstances: (1) the magistrate or judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or should have known was false absent their disregard for the truth; (2) the magistrate or judge failed to act in a neutral and detached manner; (3) the affidavit in support of the warrant was so lacking in indicia of probable cause so as to render belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid. Id.

Attachment F to the search warrants includes "firearms" on the list of "Items to be Seized." (See D.E. 84-1 at 28.) According to the search warrant affidavit, part of the basis for the search was a suspected violation of Title 26 of the United States Code, specifically receipt or possession of an unregistered firearm. 26 U.S.C. § 5845(a)(7) defines "firearm" as including "any silencer (as defined in section 921 of title 18, United States Code)." 18 U.S.C. § 921(a)(24) defines "silencer" as "including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." Thus, "firearms," as defined by federal law, includes firearm silencers and their components. Although the affidavit sets forth probable cause for the existence of specific unregistered firearms such as "components from which a destructive device such as a bomb, grenade or

6

mine can be readily assembled," (D.E. 84-1 at ¶ 33), the inclusion of "firearms" as items to be seized is arguably overbroad. Thus, although the silencer components fit within the scope of the search warrants it is unclear whether the search warrants themselves were impermissibly overbroad. Nevertheless, assuming the search warrant's inclusion of "firearms" renders it unconstitutionally overbroad and in violation of the Fourth Amendment's requirement of particularity, the Court finds the exclusionary rule should not apply based upon the good faith exception.

None of the four exceptions described in Martin are present in this case such that the good faith exception to the exclusionary rule should not apply. Defendant challenges the search warrant affidavit as so lacking in probable cause that any belief in its existence would be entirely unreasonable. Nevertheless, the search warrant affidavit contains over fifteen pages detailing the affiant's investigation and the basis for probable cause. The face of the affidavit is not "bare-boned," nor does it contain conclusory allegations. Instead, it states sufficient facts to justify a conclusion that evidence or contraband would probably be found at Defendant's storage locker or aboard his sailboat. The affidavit describes numerous recent purchases made by the Defendant of chemicals such as potassium nitrate, sulphur powder, and magnesium ribbon. (See D.E. 84-1 at ¶ 15.) It also describes Defendant's purchase of inert military weapons including an M-31 Grenade Rifle as well as the recent purchase of "safety fuse." (Id. at ¶¶ 16, 18.) The affidavit additionally describes how on June 26, 2007, a K-9 officer and a certified explosive detection dog conducted a sweep for explosive

materials at the public storage location and the dog alerted to the presence of nitrates four times outside of Defendant's storage unit. (Id. at ¶ 22.) The affidavit further sets out the details of several encounters between Defendant and other law enforcement officers in which Defendant displayed a pineapple grenade and other items such as The Anarchist Cook Book aboard his sailboat. (Id. at ¶¶ 26-29.) The affidavit further established numerous connections between Defendant and the two locations to be searched. (Id. at ¶¶ 16, 19, 27-29.) All of this information was fresh in relation to the July 6, 2007, search warrant affidavit and the corresponding execution of the warrants the next day. As such, an objective officer would not have been entirely unreasonable in believing the warrant was supported by probable cause. Thus, the Court finds the silencer components should not be suppressed based upon the agents' good faith reliance on the search warrants.

### B.    Plain View Exception

Alternatively, the Court finds the silencer components should not be excluded pursuant to the plain view exception. "An officer may seize evidence that is in plain view despite the failure to obtain a search warrant if two elements are satisfied: (1) lawful access to the object seized, and, (2) the incriminating nature of the object seized is immediately apparent." United States v. Hromada, 49 F.3d 685, 690 n.11 (11th Cir. 1995) (citing Horton v. California, 496 U.S. 128, 136-37 (1990)). Additionally, "a warrant to search a specific area for a certain class of things authorizes government agents to break open locked containers which may contain the objects of the search." United States v. Jackson, 120 F.3d 1226, 1228-29 (11th Cir. 1997). "For an item's incriminating character to be 'immediately

8

apparent,' the police merely need probable cause to believe that the item is contraband." United States v. Wright, 324 Fed. Appx. 800, 804 (11th Cir. 2009) (citing Texas v. Brown, 460 U.S. 730, 741-42 (1983)).

As the Magistrate Judge notes, the search warrants permitted officers to search Defendant's storage unit and sailboat for black powder, sulfur, grenades, books and manuals, documentation, electronic storage media, floppy disks, DVDs, CDs, thumb drives, and memory sticks. (Report at 5.) As a result, the federal agents executing the warrants were authorized to search relatively confined spaces for small items. Thus, the federal agents had lawful access to the silencer components. The more pertinent question is whether the incriminating nature of the silencer components was immediately apparent to the agents. Special Agent Gomilla testified he verified prior to the search, and twice on the day of the search, that Defendant had not registered any firearms with the National Firearms Registration Transfer Record. (Tr. of October 7, 2008, Hearing, D.E. 267 at 13-14.) He further testified that based upon his experience and training he immediately recognized the silencer components as intended for use as a firearm silencer. (See id. at 17, 22.) The Magistrate Judge was in the best position to assess the demeanor and credibility of the witness and he found Special Agent Gomilla's testimony at the hearing "to be highly credible." (Report at 4.) Thus, the seizure of the silencer components at the storage locker should not be suppressed based upon the plain view exception, as Special Agent Gomilla had lawful access to the components and he immediately recognized them as intended for use as

9

a silencer. Suppression of the silencer components located on the sailboat is also unwarranted under the plain view exception. Special Agent Munoz testified that the search revealing the silencer components at the storage unit was conducted prior to the search of the sailboat. (Tr. of October 7, 2008, Hearing, D.E. 267 at 52.) The seizure of the silencer components on the sailboat was based upon the results of the prior search and recognition by one of the evidence technicians at the scene that the items were likely silencer components. (Id. at 54-55.) As a result, there was sufficient probable cause for Special Agent Munoz to believe the items were contraband. Thus, the Court also finds the seizure of the silencer components on Defendant's sailboat should not be suppressed based upon the plain view exception. Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Consistent with this Order, the Report and Recommendation of the Magistrate Judge (D.E. 249), issued on October 22, 2008, is **ADOPTED**;

2. Defendant Andrew Marshall's Second Motion to Suppress (D.E. 207), filed on August 20, 2008, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of March, 2011.

*Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**